Grosso v. AT&T Pension, 22-1701 Under the Special Update Amendment to the AT&T Pension Plan, plaintiffs became eligible at age 55 for payment of unreduced pension benefits for life. Had they applied for them at that time, they would have received them. When they later applied for their pensions at ages 62 and 59, the plan denied back payments to age 55 based on a requirement appearing nowhere in the plan that an application should be made to the AT&T Pension Plan. The application was also necessary to create a benefit entitlement. On summary judgment, the district court first ruled that section 4.06D of the plan was ambiguous. That was the court's first error. That- Before we keep going, let me make sure we know which plan we're talking about. So which plan, or to which plan, are your clients subject? The terms of the special update- Which is 1997. In 1997, with the plan amendments in 1997, they were, those are the, that language is the operative language. It was, the right to special update benefits was incorporated in the 98 plan. So in theory, it should mean the same or no less. It can mean no less than what the language of the 97 amendments provided for. Okay, but to which plan are your clients subject? Or under which plan are they covered? There are three is my understanding. 96 as supplemented by the special amendments in 97, 98 and 26. As a legal matter, they are covered by the 97 amendments to the 96 plan. On summary judgment, the district court only had the 98 the first time around. The district court only had the 98 plan in front of it. And so I am addressing myself to the error that she made with the 98 plan, first time around. But why does that matter, since you have now made it clear that your clients do not proceed under the 98 plan? Well, we didn't, the meaning is the same, but can be no less. As a practical matter, to show that the district court erred, I can show that she misinterpreted the 98 plan to start with. I don't understand. Why are we concerned with a plan that's not the plan? If the court accepts that the 98 plan doesn't apply, then yes. Does anybody contend that it does apply? I believe my opposing counsel believes that it does. Then go ahead. Okay, just briefly. Article 4.06D states that a participant may commence his or her pension. And the district court thought that commence could mean commence entitlement to or payment of. The plain meaning of that, this court reviews that decision de novo as to the plain meaning of the language. The plain meaning of, first of all, commence plainly means to start or begin. And commence payment is a natural reading of that language. And entitlement is a status that you earn by satisfying the eligibility conditions in a plan. And you don't commence an entitlement, you earn it. And so you don't choose to commence an entitlement by filing an application, it exists. The district court went off the rails in believing that commence could mean commence entitlement to. It could only- But counsel, the district court remanded. Let's assume you're correct. The district court made a mistake in finding that the language was ambiguous. Your claim is that it's the 1997-96 plan as amended by the 97 amendments. And that issue was taken up on the court's- On remand. Decision for summary judgment, the second go around. The second. Why are we talking about the court's first decision for summary judgment when the court didn't grant summary judgment, remanded it, and then on remand, as I understand it, the board considered the supplemental information you were trying to add. The 96 plan and the amendments. And then when the case came back to the district court for the second motion for summary judgment, the court addressed it. So why aren't we focusing on that issue? And how were you harmed by a misinterpretation of the 98 plan, when the court actually considered the 97, or the 96 plan with the 97 amendments? I'll go straight to the 97 plan. The 97 plan, the plain language of the special update amendment stated that a pension be payable on termination of employment. The court determines the plain meaning of plan language de novo. And it also determines it as a matter of law. Be payable is defined in Black's Law Dictionary to mean creating an entitlement to. And what the plain meaning of that language was, was to create an entitlement to your pension at termination of employment. A second resolution stated that you could commence your benefits at any time, at the first of any month after termination of employment. The entitlement existed at termination of employment, not at some later point. What the fiduciary did on remand is it interpreted this be payable language to connote payment of a pension. And since it stated payable at termination of employment, it took it to mean that you could receive it at termination of employment. But that wasn't the plain legal meaning of the language. The legal meaning of the language was, you had that entitlement at that point. And that you exercise that entitlement by filing your application for payment. Now, what the special update did is it created the right to receive an unreduced pension benefit at age 55. Now, to determine the intent of the resolutions, we look only to the plain language of the resolutions, not to extrinsic evidence, not to other evidence. The plain language was that if you applied- I mean, when there's no ambiguity. Well, there hasn't been any claim that the resolutions are ambiguous. The resolutions themselves be payable. The fiduciary just did not provide the, it doesn't have the right to ignore the plain legal meaning. You can be reasonable but wrong, and they were wrong. The plain legal meaning was they had a right at termination of employment. Once they applied for their benefits, well, excuse me. The resolutions provided that when you have the right to an unreduced benefit at 55, whether you apply for it before 55 or at 55, what you are getting is the actuarial present value of the benefit, the full benefit at age 55. And there's nothing in the resolution to suggest that if you apply after 55, somehow you're going to forfeit payment of that unreduced benefit at 55. That's, there's nothing in there to creating a forfeiture out of thin air. The context of the resolutions was that AT&T was in the process of downsizing, as a January 3rd, 1996 article in the New York Times stated. They were eliminating 40,000 jobs over three years. And they were creating the same rights to pensions for these people who would lose their jobs as the service pensions had provided in the old plan. Under the old plan, you could get a full pension at age 55, 20 years at age 55, 25 years and you left employment at age 50, or 30 years at any age if you left at age 55. You'd get a full pension. And you had to take it right away. You couldn't wait. The special update gave people the right, the entitlement at age, when they left employment to that full pension, if it did not commence by age 55. When they finally did apply, and an application is just an administrative requirement. It is not, in the world of ERISA, it is not considered to be a requirement of entitlement. I see that my time has expired. Unless the court has further questions, I will sit and wait for rebuttal. You've reserved some time. Thank you, sir. All right, we'll hear from AT&T, Ms. Johnson. You have 12 minutes. Good morning, may it please the court. My name is Ashley Johnson. I'm here on behalf of the defendant's appellees, AT&T, and the AT&T Pension Benefit Plan. This case is a routine application of the deference that is owed to administrators of retirement plans under ERISA. So the only question before this court, Justice- Well, let me ask just a quick one. Okay. When you say routine deference, isn't counsel correct, your adversary counsel, isn't he correct, that if there is no ambiguity, if the plain meaning of the plan dictates one thing, then the court is not entitled to go to parallel evidence that might say something different. Is that correct or not? It would be correct that it would be at abuse of discretion for the committee to interpret plain language erroneously. Here, we would say first that the plain language of the plan, the 1998 plan, clearly suggests that there was not a right to retroactive benefits, that the normal retirement age was 65, and the only way to receive your normal retirement benefit before age 65 was to opt to do so and make that election. You said of the 98 plan, but why this is the first dispute we started with. And why are we talking about the 98 plan rather than the 96 plan as modified by the 97 special resolution? So two reasons, your honor. First, the 1998 plan is what plaintiffs brought their claim under. They brought a claim under the 1998 plan. They asserted in their complaint the 1998 plan was the controlling plan. And the case was litigated in that way for three years. They eventually tried to start over and use the 96 plan with the 97 special update. The district court denied that request to change horses three years into the litigation. Second, it is correct for the 1998 plan to apply because the 1998 plan provides that it applies to people terminated after January 1st, 1998, except as provided herein. When it discusses the special update, it says the special update is available to people who were employed by AT&T on January 1st, 1997. So the 1998 plan is the one that governs. I'm not sure. Ultimately, it's a distinction without a difference because there's no dispute that the 1996 plan does not provide for payment of normal retirement benefits to people like the plaintiffs prior to 65. So the 96 plan was amended by the special update in 97? So it wasn't exactly amended. The special updates came in 1997. They resolved that would be the new approach and it would be incorporated into the plan in 97. They were separated from employment prior to the institution of the 98 plan. But somehow retroactively, that plan, even though they were separated in June and July of 97, the 98 plan, which came into effect, I understand that what both of you are saying about the special update language is the same. It persists. It's what we're really focused on here. But in terms of the plan itself, your position is that it is the 98 plan that applies to two parties, employees who separated from employment in 1997? I would say only with respect to this very particular issue because the 1998 plan said here's the new special update that we're sort of codifying and we're saying this that we are codifying, this special update, is applicable to people who were here on January 1st, 97. So they pled the right plan is what you're, from your point of view? At least, yes. I mean, we think that that was a, yes, because at least that the 1998 plan provides that its provisions about the special update do apply back. I understand that, but it seems to me this is a large company. There have got to be thousands of employees that separated from employment between January 1st, 1997 and the institution of the 98 plan. And I'm just a little confused as to how all of those people who separated in 97, their retirement plan is the 98 plan. But if that's, if you're telling me they, the plaintiffs have filed under the correct plan from defendant's perspective, then I'll accept that that's your perspective. Well, and I would say again, most of the 1998 plan would not apply to anybody from those terminated in 1997. It's just that the special update benefits, they were only this resolution in 97 and then they were clarified and built out, et cetera, in 98. So it's only that part. It's not everything about, like there was a cash balance plan. So they're covered by the 96 plan otherwise. Yes. But they are entitled to. I'm sorry. No, but they're entitled to the benefits of the special update which were enacted in 97 and then further codified or concretely set down in 98. That's right. I understood you to be saying in response to the question I asked a little while ago that it doesn't really matter whether the 96 plan or the 98 plan is the one that would be applicable, everything else, were it not for the conduct of the plaintiffs in bringing this litigation. Your answer to me was the plaintiffs brought the case under the 98 plan and it was only after it had been litigated for a long time under the 98 plan that they then tried to change and the district court said, no, no, we're not changing. You brought this case under the 98 plan and that's what we're sticking with. So that the issue, your position is, the issue for us is not what was the right plan. The issue is since plaintiff chose to litigate under the 98 plan, they can't now change horses and say, no, no, no, no, we were wrong. We should have been pleading the 96 plan and we should go back to square one. That's right, Your Honor, and we just didn't defend on the basis that we didn't make arguments the special update was somehow inapplicable because they were terminated in 97. They brought the case under the 98 plan and we engaged on the question of were the special updates of 97 as codified in 1998 giving them a right to retroactive payment? That was the question and we, again, I don't, I think it's kind of to an extent a distinction without a difference because neither the 1997 updates nor their codification in the 1998 plan provides for retroactive payment of benefits and the benefits plan committee analyzed both the 1998 plan and the 1996 plan slash 1997 updates held neither one entitled them to retroactive payment and that decision is entitled to arbitrary and capricious review. So is it your position that the district court was mistaken, although it was at first mistaken in going back to not only allow but direct the presentation of parallel evidence because your position is there was no need to do that, it ended up right, correct in any event, but the district court should have ruled because of the plain language directed that there can be no retroactive payments, only prospective. So, right, and the. Can you, will you point to us the language that you say plainly and unambiguously leads to that determination? So, yes, I would say two things. One is the plain language of the contract, of the plan, the 1998 plan does not say anything about retroactivity. So our position is if there are two reasonable interpretations of plain language and the committee adopts a reasonable interpretation of the plain language, that is entitled to deference and arbitrary and capricious review. Well, your adversary's position is that it doesn't matter whether it says something about retroactivity. He says that the plain language means that when one reached a certain point, one was entitled to that money and you would get it whenever you applied for it within the limits of the plan. So his position is you don't need to, the plan doesn't need to have talked about retroactivity if the participants had a vested right to receive that money when they, at the time that they filed their election and decided to get what was coming to them. And there's simply nothing that supports that, your honor. So in the 1998 plan, section 4.06D is the most relevant provision. And it says that a participant may commence their pension at any time after the termination of employment, but if it does not elect otherwise, distribution will begin no later than the 60th day after the end of a plan year in which the person turned 65 and then there are other components. And then it says notwithstanding the foregoing, the failure of an employee and spouse to consent to a distribution when the benefit is immediately distributable is deemed to be an election to defer commencement of payment of the benefit, sufficient defer commencement of payment of any benefit. So we think that the committee reasonably determined the first time or was not arbitrary and capricious in determining that the import of section 4.06D was that the normal distribution will be at 65 unless a participant elects otherwise. Now, the 1997 special updates, which is more what Mr. Lee Bras talked about today, say that it is payable on termination. And what the committee said properly when they had to consider this in their last decision is that that application of that payable to provision the way that the plaintiffs want it doesn't make any sense because they're not seeking benefits retroactive determination. So it proves too much to say, well, the benefits were payable at termination because they're not claiming they were supposed to get them at termination and they're not claiming they're supposed to get them retroactive to termination. They're simply claiming they should get them at the earliest date they were entitled to elect them without reduction. But there's nothing that says that in 4.06D or in the 1997 special resolutions. One of the issues before us is whether the court erred in not allowing the supplement, which I guess it wasn't a motion to amend the complaint, which are liberally granted, but a motion to supplement, even if we were to assume it was a motion to amend the complaint, is you make a futility argument. You also make a prejudice argument. I'm not sure I follow that argument, but in terms of futility, is your position that because under either the 96 plan as amended by the 97 amendments or supplements or the 98 plan, neither gives the plaintiffs the relief they seek. And therefore it would have been futile to allow the amendment because the committee did consider the arguments? Yes, I think that's part of it. It certainly would be futile because the committee considered and rejected both arguments. It was not arbitrary and capricious in doing so. The parole evidence clearly pointed that way. And then as I just talked about the 4.06D, the committee reasonably could have concluded the plain language of that, as well as the plain language of the special resolutions where it concluded payable determination could not help them because they're not looking for something determination. All of that was not arbitrary and capricious. The other reason that I think it would be futile is that there's no dispute the 1996 plan doesn't provide for retroactive payment. And if the 98 plan also doesn't, it's very hard to understand how the 97 special resolutions somehow on their own created a six month right that then went away in 98. Thank you, counsel. Thank you. And Mr. Libras, you've reserved three minutes. Yes, Your Honor. First, in the complaint, paragraph 30, paragraph 35 stated when pension benefits are involved, the controlling plan is the one in effect at the time of termination of covered employment. That's what we alleged in the complaint. So why did you seek to supplement? You already alleged it. Why did you need to supplement? We may not have needed to because we presented, once it was remanded, we presented all the information to the fiduciary, the evidence, the arguments, extensive arguments. But the next paragraph says that's the 98 plan. I'm sorry? Yes, it does. Yes, it does. What happened was that we did it as a matter of more of courtesy, but we may not have needed to as a practical matter. So then where's the harm if you alleged it and when it went back on remand, the committee considered it and the district court considered It's in the case. under the arbitrary, if I can finish my question, the committee considered it, you concede that, correct? The committee addressed it. The committee considered the 96 plan and the amendments, your arguments on that. You agree? They did address it, correct, Your Honor. And the district court reviewed that decision under the arbitrary and capricious standard, correct? Yes, Your Honor. And there's no dispute that that's the standard that would apply on summary judgment, correct? There is a dispute. The plain meaning of language is a legal matter that the court is supposed to review de novo and that this court reviews de novo, the plain meaning of language. And we made the plain meaning argument to the committee on remand, we made it to the district court and we've made it to this court. Let me, my final question, because I don't want to take up all your time, is that you, in essence, didn't the court allow a constructive amendment because the committee considered it and the district court reviewed that decision? In essence, yes. Yes. Secondly, the fiduciary in this case is obligated to seek the truth and apply plan language correctly. Originally, the case, they're not the typical litigant that in the marketplace. They have the obligation when the case was first presented to them, if they knew that article one stated that the plan in effect determination of employment applied, they had the obligation to apply that and apply the special update resolutions because the defendant stipulated in the statement of undisputed facts that the resolutions amended the 96 plan. They had the legal obligation. Their statement here that the case was just presented based on the 98 plan ignores their fiduciary duty to actually look to the resolutions and the resolutions themselves at joint appendix 1992 state, the chairman of the committee in presenting the resolution stated that they were changing the plans to a cash balance design effective January 1st, 1998 for plan participants who are on the active role of a participating company on or after that date. They were stating in the resolutions that the cash balance plan doesn't apply. That's what article one said with an exclusion slightly below. That's again, at joint appendix 1992. I see, oh, I have 20, excuse me, Your Honor. Your time is up, but if you'd like to wrap up. Yes, Your Honor. Again, 4.06D of the 98 plan was inaccurately construed by the district court. It wasn't ambiguous. And because of that, the Canseco case that we've described both in our original brief and in our reply brief is persuasive authority that a plan administrator has the obligation to pay all benefits that a participant is eligible for from the date of application back to the date of eligibility. Thank you, Your Honor. Thank you. Thank you both. Thank you, Your Honor.